## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Cavasseaire Dykes,

                Petitioner,      Case No. 17-cv-13617

v.                            Judith E. Levy
                                United States District Judge

Randall Haas,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [1], DENYING A CERTIFICATE OF APPEALABILITY AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

Cavasseaire Dykes, ("Petitioner"), confined at the Gus Harrison Correctional Facility in Adrian, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction for unlawful imprisonment, Mich. Comp. Laws § 750.349b, first-degree home invasion, Mich. Comp. Laws § 750.110a(2), possession of a firearm by a felon, Mich. Comp. Laws § 750.224f, felonious assault, Mich. Comp. Laws § 750.82, possession of a firearm during the commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227b,

domestic violence, Mich. Comp. Laws § 750.81(2), and being a second felony habitual offender, Mich. Comp. Laws § 769.10. For the reasons set forth below, the petition for a writ of habeas corpus is denied with prejudice.

## I. Background

Petitioner was convicted following a jury trial in the Genesee County Circuit Court. This Court recites verbatim the relevant facts regarding Petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> The complainant and defendant began dating in 2011. According to the complainant, she ended the relationship at some point toward the end of May 2013 after several incidents in which defendant had become physically violent toward her. On June 1, 2013, she was home alone when she heard defendant yelling and knocking on the back door of her house. The complainant testified that he sounded angry, so she yelled through the door that he needed to calm down and leave, and that she would talk to him later. Instead, defendant broke a window frame near her back door and entered her house. She ran out the front door. Defendant chased her, grabbed her by the hair, and dragged her back into the house, where he hit her with a gun, and kicked and punched her. He

also held her at gunpoint and told her that the only way she would leave the house was in a "body bag."

Two responding police officers testified that as they approached the house, they could hear two people yelling; however, when they knocked on the door, the voices stopped. After they knocked for several minutes, they announced that they would kick the door in, and the complainant then came to the door with scratches, marks and bruises on her face and body. The officers testified that she was initially evasive in response to their questions as to the whereabouts of the person who had assaulted her, but she eventually told them that defendant was hiding in a bedroom underneath a bed. She also told them that defendant had hidden the gun between her mattress and box spring. The officers then located defendant and the gun in the designated locations.

*People v. Dykes*, No. 323944, 2016 WL 716789, at *1 (Mich. Ct. App. Feb. 23, 2016).

Petitioner's conviction was affirmed. *Id., lv. den.* 500 Mich. 856, 883 N.W.2d 766 (2016).

Petitioner seeks a writ of habeas corpus on the following grounds:[1]

A.    Trial counsel was ineffective for failing to discover and utilize the complainant's prior convictions of dishonesty and her similar allegations of abuse against her child's father.

---

[1] *See* ECF 1, PageID.6, 8, 10, 11, 13 and 15.

B.    Trial counsel was ineffective for failing to interview and call favorable witnesses who could have contradicted the key witness testimony and verified the petitioner's residency at the home in question.

C.    Petitioner was denied his Sixth Amendment right under the US Constitution to the effective assistance of counsel and a fair trial because counsel failed to object and move for a mistral when the prosecutor elicited irrelevant and unfair prejudicial similar acts evidence.

D.    The prosecutor elicited testimony from the complainant that petitioner had broke[n] a flat screen T.V. over the complainant's head, stomped on her head which caused her to lose a baby. Petitioner argues that this testimony of other bad acts was inadmissible under MRE 404(b)(1) and that it was improperly admitted as evidence of his propensity to commit acts of domestic violence in violation of US Const Ams V, XIV.

E.    Petitioner contends that he is entitled to a writ of habeas corpus because he discovered that the complainant had prior convictions involving dishonesty, therefore the prosecution committed a *Brady* violation in failing to honor a specific request for the complainant's criminal record.

F.    Petitioner's federal constitutional rights were violated under US Const Ams V & XIV, Const 1963 Art 1, §17 as to first-degree home invasion, because the trial judge erroneously scored 15 points for offense variable 8 for facts that did not pertain to the sentencing offense and 25 points for offense variable 13 absent proof of a continuing pattern of felonious criminal activity.

4

(ECF No. 1, PageID.6, 8, 10, 11, 15.)

## II. Legal Standard

A § 2254 habeas petition is governed by the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, which imposes the following standard of review:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410–11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

## III. Analysis

## A. Claims # 1, 2, and 3: Ineffective Assistance of Counsel Claims

In his first, second, and third claims Petitioner alleges that he was denied the effective assistance of counsel. To prevail on his ineffective assistance of counsel claims, Petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

Petitioner first argues that trial counsel was ineffective for failing to discover and use the victim's prior criminal convictions to impeach her credibility. Petitioner raised this claim in his *pro per* supplemental appeal brief that he filed along with the brief filed by appellate counsel.[2]

---

[2] *See* Defendant's Standard 4 Supplemental Brief and Exhibits (ECF No. 10-15, PageID.1032–1066, *see* Exhibits specifically at PageID.1061–1066). Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides that a *pro se* brief may be filed within 84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions." *Ware v. Harry,* 636 F. Supp. 2d 574, 594, n. 6 (E.D. Mich. 2008).

The Michigan Court of Appeals rejected this claim, ruling that Petitioner had "not identified or provided evidence of the offenses that the complainant allegedly committed." *People v. Dykes*, 2016 WL 716789, at *4.

The Michigan Court of Appeals' factual determination was incorrect. Petitioner attached to his Standard 4 supplemental brief a judgment of sentence and other documents which established that the victim had been convicted in 2006 of making a false report or threat of a bomb or harmful device and malicious use of a telecommunications device.[3]

Under Michigan Rule of Evidence 609, evidence that a witness has been convicted of a crime may not be admitted unless the crime: (1) contained an element of dishonesty or false statement, or (2) contained an element of theft, was punishable by more than one year in prison, and has significant probative value on the issue of credibility. This Court has

---

[3] Petitioner has also attached to his petition a copy of a court docket sheet indicating that the victim also pleaded guilty to filing a false police report. (ECF No. 1-1, PageID.125). It does not appear that Petitioner presented evidence of this conviction to the Michigan Court of Appeals. Nonetheless, even if the Court also considers evidence of this other conviction, Petitioner's claim fails for reasons stated by this Court.

found no Michigan cases which indicate that any of the victim's prior convictions could have been used under Michigan Rule of Evidence 609 to impeach her credibility. One unpublished case suggests that a false bomb threat conviction could be admissible under Michigan Rule of Evidence 609, in the context of the right to present a defense claim. *See People v. Leaym*, No. 235009, 2003 WL 21079821, at *5 (Mich. Ct. App. May 13, 2003) (rejecting right to present a defense claim when the defendant was permitted to introduce evidence that the complainant had a juvenile conviction for making a false bomb threat). However, there are no cases suggesting that a conviction for malicious use of telecommunications device can be used for impeachment under Michigan Rule of Evidence 609. Filing a false police report is a conviction that can be used to impeach a witness' credibility. *See People v. Adamski*, No. 231249, 2002 WL 1308631, at *3 (Mich. Ct. App. June 14, 2002).

Assuming that any or all of these offenses could be used for impeachment purposes, Petitioner has failed to show that he was prejudiced by counsel's failure to use the victim's prior criminal convictions because counsel impeached her with a variety of other evidence.

During cross-examination, defense counsel elicited testimony from the victim that she resumed the relationship with Petitioner after an earlier incident in which she claimed that Petitioner had duct-taped her in the attic and discharged a gun. (ECF No. 10-12, PageID.614–616). Counsel also elicited testimony from the victim that she never called the police after a subsequent incident in which she claimed that Petitioner broke a flat screen television over her head. The victim also admitted that although she initially went to the hospital after this incident, she did not stay to receive any medical treatment. (ECF No. 10-12, PageID.617–620). Counsel confronted the victim with her prior testimony from the preliminary examination in which she had acknowledged that Petitioner had stayed at her house for about three days before the day of the offense. She also admitted that Petitioner stayed at her house once a week and he would come over every day to every other day. The victim admitted that Petitioner's daughter was still living at the house with her. This evidence impeached the victim's testimony that Petitioner no longer lived at her residence. (ECF No. 10-12, PageID.621-26). Accordingly, Petitioner's counsel impeached the victim with a variety of other

evidence, and Petitioner has not shown that he was prejudiced by the failure to impeach her through her prior convictions.

Also, on cross-examination of the responding police officers, Petitioner's counsel obtained admissions that they did not remove a gun or bullets from Petitioner when they found him lying under the bed. (ECF No. 10-12, PageID.680-85, 711–712). One of the officers on cross-examination indicated that when the victim opened the door, she informed him that everything was alright. This officer admitted that the victim falsely told him that Petitioner had left out of the back door. (ECF No. 10-12, PageID.692–693). Another officer stated that the victim did not want the police to call an ambulance. (ECF No. 10-12, PageID.712–714). Defense counsel pointed out that in the audiotape of the 911 call there is no mention of Petitioner having a gun. (ECF No. 10-12, PageID.700–701). Defense counsel also obtained admissions from the officer in charge of the case that the victim never told him about the prior incidents in which she claimed Petitioner had duct-taped her or hit her over the head with a television set. (ECF No. 10-13, PageID.790–793).

Any failure by trial counsel to impeach the victim with her prior convictions was not prejudicial because counsel impeached her with other

11

damaging evidence. *See Davis v. Booker*, 589 F.3d 302, 309 (6th Cir. 2009).

Petitioner next claims that trial counsel was ineffective for failing to call several *res gestae* witnesses whom Petitioner claims would refute the victim's allegations. A habeas petitioner cannot show deficient performance or prejudice resulting from counsel's failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material to his defense. *See Hutchison v. Bell*, 303 F.3d 720, 748 (6th Cir. 2002).

Petitioner is not entitled to relief on this claim because he failed to provide the Michigan courts or this Court with an affidavit from these witnesses concerning their proposed testimony and willingness to testify on Petitioner's behalf. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, cannot support a claim for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). In failing to attach any offer of proof or any affidavit sworn by these witnesses, Petitioner offered, neither to the Michigan courts nor to this Court, any evidence beyond his own assertions as to whether these witnesses would have testified and what their proposed testimony would

have been. Without such proof, Petitioner is unable to establish that he was prejudiced by counsel's failure to investigate or to call these individuals to testify at trial. *See Clark v. Waller,* 490 F.3d 551, 557 (6th Cir. 2007).

Moreover, the United States Supreme Court has held that habeas review under 28 U.S.C. §2254(d) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Therefore, *Cullen* would preclude the Court from considering any new evidence that Petitioner would present at this point in support of this portion of his ineffective assistance of trial counsel claim under 28 U.S.C. §2254(d). *Cf. Campbell v. Bradshaw*, 674 F.3d 578, 590, n.3 (6th Cir. 2012) (declining to consider testimony taken in federal evidentiary hearing because it was not part of the state-court record). Petitioner presented no evidence to establish that the outcome of the trial would have been different had these witnesses been called to testify.

In addition, there is a strong indication from the Michigan Court of Appeals' decision that the reason trial counsel did not call these

witnesses is because he had not been informed by Petitioner at any time prior to trial that these individuals could be potential defense witnesses:

> We note that, although defendant refers to the witnesses as "res gestae" witnesses, there is no evidence that the individuals identified in his Standard 4 brief were present at the scene of the incident. Defendant also does not indicate that he informed trial counsel about the existence of these witnesses. Counsel could not be expected to call witnesses whose existence was unknown to him.

*People v. Dykes*, 2016 WL 716789, at *4.

A trial attorney is not ineffective for failing to call witnesses that he is unaware of. *See Ballinger v. Prelesnik*, 709 F.3d 558, 563 (6th Cir. 2013); *see also Bigelow v. Williams*, 367 F.3d 562, 571 (6th Cir. 2004). "Counsel cannot be expected to interview unknown witnesses." *Ballinger,* 709 F.3d at 563. In the absence of any evidence that Petitioner informed trial counsel about these witnesses before trial, the state court's rejection of this portion of Petitioner's ineffective assistance of counsel claim was not unreasonable. *Id.*

Petitioner next contends that trial counsel was ineffective for failing to object to the victim's testimony about the prior domestic assault incidents. Petitioner argues that this evidence was irrelevant and inadmissible pursuant to Michigan Rule of Evidence 404(b)'s prohibition

14

on using prior bad acts to establish a defendant's propensity to commit the charged offense.

The Michigan Court of Appeals rejected the claim, finding that the evidence was admissible because Mich. Comp. Laws § 768.27b(1) permits the introduction of prior assaultive behavior to establish a defendant's propensity to commit a crime of domestic violence. *People v. Dykes*, No. 2016 WL 716789, at *2. Counsel was not ineffective for failing to object to this evidence. *Id.,* at *5.

Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). The Michigan Court of Appeals determined that evidence that Petitioner had previously assaulted the victim was admissible under Michigan law. This Court must defer to that determination in resolving Petitioner's ineffective assistance of counsel claim. *See Brooks v. Anderson*, 292 F. App'x 431, 437–438 (6th Cir. 2008). Because this Court "cannot logically grant the writ based on ineffective assistance of counsel without determining that the state court erred in its interpretation of its own law," this Court is

constrained to reject Petitioner's third ineffective assistance of trial counsel claim. *See Davis v. Straub*, 430 F.3d 281, 291 (6th Cir. 2005).

The Michigan Court of Appeals' determination that Petitioner was not denied the effective assistance of trial counsel because of counsel's failure to object to the admission of this "bad acts" evidence was not contrary to, or an unreasonable application of, clearly established federal law, and would not warrant federal habeas relief in light of the Michigan Court of Appeals' finding that this "bad acts" evidence was admissible under Michigan law. *See Pearl v. Cason,* 219 F. Supp. 2d 820, 828-29 (E.D. Mich. 2002). Petitioner is not entitled to relief on his ineffective assistance of counsel claims.

### B. Claim # 4. The Prosecutorial Misconduct Claim.

Petitioner claims that the prosecutor committed misconduct by introducing evidence of Petitioner's prior domestic assaults against the victim, in violation of Michigan Rule of Evidence 404(b)'s prohibition on the introduction of propensity evidence. "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be

held to violate a criminal defendant's constitutional rights only if they
"'so infected the trial with unfairness as to make the resulting conviction
a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)
(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).
Prosecutorial misconduct will thus form the basis for habeas relief only
if the conduct was so egregious as to render the entire trial
fundamentally unfair based on the totality of the circumstances.
*Donnelly v. DeChristoforo*, 416 U.S. at 643–645. To obtain habeas relief
on a prosecutorial misconduct claim, a habeas Petitioner must show that
the state court's rejection of his prosecutorial misconduct claim "was so
lacking in justification that there was an error well understood and
comprehended in existing law beyond any possibility for fairminded
disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting
*Harrington*, 562 U.S. at 103). A habeas petitioner must clear a "high bar"
in order to prevail on such claims. *Stewart v. Trierweiler*, 867 F.3d 633,
638 (6th Cir. 2017).

     As set forth above, the Michigan Court of Appeals ruled that
evidence of Petitioner's prior domestic violence against the victim was
admissible under Michigan law to establish Petitioner's propensity to

17

commit domestic violence. Although Federal Rule of Evidence 404(b) and its state counterpart Michigan Rule of Evidence 404(b) generally prohibit a prosecutor from introducing evidence of a defendant's prior bad acts, the United States Supreme Court has never held that the federal constitution forbids a prosecutor from doing so. For this reason the rejection of Petitioner's prosecutorial misconduct claim by the Michigan courts would not entitle Petitioner to habeas relief. *See Wagner v. Klee*, 620 F. App'x 375, 378 (6th Cir. 2015).

The Michigan Court of Appeals concluded that evidence of Petitioner's prior domestic violence was relevant and admissible under Michigan law. A prosecutor does not commit misconduct by introducing evidence that is admissible under state law. *See Dufresne v. Palmer*, 876 F.3d 248, 261 (6th Cir. 2017). Therefore, a prosecutor "does not commit misconduct by asking questions that elicit inadmissible evidence." *Id.*, (quoting *Key v. Rapelje,* 634 F. App'x 141, 148 (6th Cir. 2015)). Petitioner is not entitled to relief on his fourth claim.

### C. Claim # 5. The *Brady* Claim

Petitioner contends that the prosecutor intentionally withheld evidence of the victim's prior criminal history which Petitioner argues

18

could have been used to impeach her credibility. To prevail on this claim, Petitioner must show (1) that the state withheld exculpatory evidence and (2) that the evidence was material either to guilt or to punishment irrespective of good faith or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87 (1963). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 683 (1985). In *Strickler v. Greene,* 527 U.S. 263, 281–82 (1999), the Supreme Court articulated three essential elements of a *Brady* claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. "Prejudice (or materiality) in the *Brady* context is a difficult test to meet." *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002).

A habeas petitioner bears the burden of showing the prosecution suppressed exculpatory evidence. *See Bell v. Howes*, 703 F.3d 848, 853

(6th Cir. 2012). Petitioner's *Brady* claim fails because the victim's criminal convictions were part of a court docket that were public records available to members of the public. There is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available from another source. *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998). The victim's criminal convictions were public records that were readily available to Petitioner or his counsel without the assistance of the prosecutor. The prosecutor's failure to provide Petitioner with the victim's prior criminal convictions therefore did not violate *Brady. See Bell v. Bell,* 512 F.3d 223, 235 (6th Cir. 2008); *Lewis v. Tennessee,* 279 F. App'x 323, 325 (6th Cir. 2008).

Petitioner is also not entitled to habeas relief because the victim's prior criminal convictions were not material. Evidence that impeaches a witness "may not be material if the State's other evidence is strong enough to sustain confidence in the verdict." *Smith v. Cain*, 565 U.S. 73, 76 (2012) (citing *United States v. Agurs*, 427 U.S. 97, 112–113, and n. 21 (1976)). Impeachment evidence may be considered to be material where the witness in question supplies the only evidence linking the defendant

to the crime or the only evidence of an essential element of the offense. *See United States v. Avellino*, 136 F.3d 249, 256 (2nd Cir. 1998); *Lyon v. Senkowski*, 109 F. Supp. 2d 125, 139 (W.D.N.Y. 2000). The Sixth Circuit has noted that: "[C]onsiderable authority from the Supreme Court and our court indicates that a defendant suffers prejudice from the withholding of favorable impeachment evidence when the prosecution's case hinges on the testimony of one witness." *Harris v. Lafler*, 553 F.3d 1028, 1034 (6th Cir. 2009) (internal citations omitted).

The victim's testimony was not the sole evidence against Petitioner. The two responding police officers testified that when they approached the house, they could hear two people yelling, although the voices stopped when they knocked on the door. After knocking for several minutes, the police threatened to kick the door in, at which point the victim came to the door with scratches, marks and bruises on her face and body. Although the victim initially did not tell the police who her assailant was, she finally told the police that Petitioner was hiding in a bedroom underneath a bed. The victim told the police that Petitioner hid the gun between her mattress and box spring. The police found Petitioner underneath the bed and the gun between the mattress and box spring.

The victim's testimony was not material, for purposes of *Brady*, because it was supported by additional testimony from other witnesses.

Finally, this Court determined that Petitioner was not prejudiced by counsel's failure to impeach the victim with her prior criminal convictions because they were cumulative of other impeachment evidence. The Sixth Circuit has observed that "it is well settled that 'the test for prejudice under *Brady* and *Strickland* is the same.'" *Montgomery v. Bobby*, 654 F.3d 668, 680, n. 4 (6th Cir. 2011); *see also Hutchison v. Bell,* 303 F.3d at 749. The prosecutor's alleged failure to provide Petitioner with the victim's criminal history did not prejudice Petitioner under *Brady* because it was cumulative of the other evidence that had been introduced at trial to impeach the victim's credibility. *See Brooks v. Tennessee*, 626 F.3d 878, 892-94 (6th Cir. 2010). Petitioner is not entitled to relief on his fifth claim.

### D. Claim # 6. The Sentencing Guidelines Claim

Petitioner claims that his guidelines range under the Michigan Sentencing Guidelines was incorrectly scored. Petitioner's claim that the state trial court incorrectly calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for

federal habeas review, because it is essentially a state law claim. *See Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007)*; Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003). Errors in the application of the state sentencing guidelines cannot independently support habeas relief. *See Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016). Petitioner had "no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *See Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009). "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Any error by the trial court in calculating Petitioner's guideline score would not merit habeas relief. *Id.*

## IV. Denial of Certificate of Appealablility

For all of the foregoing reasons, the petition for a writ of habeas corpus is denied. Further, the Court will not grant a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree

that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny Petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of Petitioner's claims to be debatable or wrong. *See Millender v. Adams*, 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002). Petitioner is not granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

## V. Conclusion

Accordingly, the Court DENIES WITH PREJUDICE the petition for a writ of habeas corpus. The Court further DENIES a certificate of appealability and leave to appeal *in forma pauperis*.

24

IT IS SO ORDERED.

Dated: January 27, 2021                    s/Judith E. Levy
Ann Arbor, Michigan                        JUDITH E. LEVY
                                           United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 27, 2021.

                                           s/William Barkholz
                                           WILLIAM BARKHOLZ